IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Reginal Spellman, #251838,               ) | CIVIL ACTION NO.  9:15-1275-RMG-BM |
|                                          ) | |
|                     Plaintiff,           ) | |
|                                          ) | |
| v.                                       ) | |
|                                          ) | **REPORT AND RECOMMENDATION** |
| Alice Mascio, Visitation Coordinator,    ) | |
| in her individual and official capacities, ) | |
|                                          ) | |
|                     Defendant.           ) | |
|                                          ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendant.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on November 18, 2015. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on November 19, 2015, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendant's motion on December 11, 2015, following which the Defendant filed a reply on December 21, 2015.

- 1 -



Defendant's motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that since being incarcerated in March 2012, he has been trying to get his common law wife (Lorraine Michelle Jones) approved for visitation. Plaintiff alleges that Jones filled out the necessary forms but that she was not approved because she was not his wife. Plaintiff alleges that Jones then filled out another form, but on this form only put down that she was a friend. However, Plaintiff alleges that Jones was turned down again because of a dismissed criminal charge on her record. Plaintiff alleges that Jones then "went forth to have [the charge] expunged", following which she submitted yet another form, which Plaintiff alleges was denied because Jones was deemed to be a security risk.

Plaintiff alleges that the Defendant is the Visitation Coordinator for the SCDC. Plaintiff alleges that he filed a kiosk request asking the Defendant to forward to the Warden of his Institution (Plaintiff alleges that the Warden has the ability to approve visitations) a copy of Jones' application so that the Warden could make his own decision, but that the Defendant replied that she would not forward this information to the Warden. Plaintiff alleges that by refusing to approve Jones' visitation requests, the Defendant is violating his First Amendment right to associate with whomever he chooses.

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendant has filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the factual allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



Plaintiff alleges that he has exhausted his administrative remedies with respect to this claim, and in this lawsuit seeks declaratory and/or injunctive relief ordering that Jones be granted visitation privileges, as well as monetary damages. Plaintiff has attached to his Complaint a copy of the dismissal of his administrative claim with respect to this issue. See generally, Plaintiff's Verified Complaint, with attached Exhibit.

In support of summary judgment in this case, the Defendant has submitted an affidavit in which she attests that she is the Division Director of Visitation and Inmate Drug Testing for the SCDC. Defendant attests that, while it is recognized that visitation periods for inmates are of tremendous value to all involved, it is necessary that a system be in place to guard against the possibility of detrimental aspects which can infiltrate the visitation system, and that the SCDC reserves the right to suspend, deny, or terminate an inmate's or visitor's visitation privileges due to legitimate concerns regarding the security and safety of the institution.

With respect to the SCDC's visitation procedure and policy, Defendant attests that when an inmate is being processed at the Reception and Evaluation Center, they are provided up to fifteen (15) copies of the "Request for Visiting Privileges" form to send to their proposed visitors. Defendant attests that any proposed visitor must complete every section of the form, and that falsification of any part of an application will result in it being disapproved. Further, if an individual seeking visitation rights has a criminal record, the nature and extent of the person's criminal record, how recent a criminal activity was, and the person's relationship to the inmate is taken into consideration. Defendant attests that, as Division Director of Visitation, she is ultimately responsible for insuring that the SCDC's policies and guidelines are followed with respect to approving and disapproving visitors.



Defendant further attests that all inmates are requested to inform staff who their immediate family members are so that those immediate family members can be placed on the inmate's "relative" list. Defendant attests that on or about March 1, 2012, Plaintiff provided a list of relatives to be placed on his relative list, which did not include Jones. See also, attached Exhibit A. Thereafter, in June 2012, Defendant received a "Request for Visiting Privileges" form from Jones in which Jones indicated that she was Plaintiff's fiancé. Defendant attests that that request was denied on June 13, 2012 because Jones had a history of prior convictions and was not an immediate family member.[3] Defendant attests that she subsequently received a "Request for Visiting Privileges" form from Jones on or about July 10, 2012, on which Jones indicated that she was Plaintiff's common law wife. See also, attached Exhibit B. Defendant attests that that request further indicated that Jones had been an inmate with the SCDC or another state/federal correctional institution, and that because of this fact and since Jones had previously been an inmate, SCDC policy required that Jones be a member of Plaintiff's immediate family to be listed on his relative list. As previously indicated, Jones was not listed by the Plaintiff on his relative list. See attached Exhibit A. Defendant additionally attests that, as Jones had left blank certain portions of the form relating to her criminal convictions,[4] the request was denied according to SCDC policy.

Defendant attests that she then received another "Request for Visiting Privileges" form from Jones on August 13, 2013. In this request, Jones indicated that she was Plaintiff's girlfriend, and also stated that her name was "Lorine Marchelle Jones", instead of Lorraine Michelle

---

[3]Defendant attests that this particular request is no longer on file. Therefore, a copy of this request has not been provided to the Court as an exhibit.

[4]See Court Docket No. 40-4, p. 3.

- 4 -



Jones as she had stated in her previous requests. <u>See also</u> attached Exhibit C. Defendant further attests that the criminal convictions listed on this form were different from the convictions listed by Jones on her July 10, 2012 application. Therefore, this request was also denied.

Defendant attests that she then received another "Request for Visiting Privileges" form from Jones on or about May 2, 2014. On this request, Jones indicated that she was Plaintiff's "fiance/friend". <u>See also</u> attached Exhibit D. Additionally, Defendant attests that the criminal convictions listed on this form were again different than the convictions listed on her two previous applications, while Defendant had herself become aware of other convictions that Jones had that were not listed on any of the forms she had submitted. Therefore, and according to SCDC policy, this request was also denied.

Defendant attests that on July 15, 2013, Plaintiff submitted a Request to Staff Member form on which he indicated that he was filing for divorce, and that Plaintiff has also submitted numerous Request to Staff Member forms or Inmate Requests seeking to have Jones granted visitation privileges in which Plaintiff, variously, refers to Jones as his fiancé, friend, or common law wife. <u>See also</u> attached Exhibit E. However, Defendant attests that, even though Plaintiff has referred to Jones as his common law wife, he has at no time ever listed Jones as a family member on his relative list. Even so, Plaintiff has been allowed other means of contact with Jones, such as by telephone and letter. Defendant attests that she herself specifically informed the Plaintiff that these other avenues of interacting with Jones are available to him. <u>See also</u> attached Exhibit F. Defendant attests that her determinations not to grant Jones visitation requests were consistent with SCDC policies and guidelines, including that Jones had admitted to having a prior criminal history, was not a verified member of Plaintiff's immediate family, and the many inconsistent statements



contained in both Jones' and the Plaintiff's numerous requests. See generally, Mascio Affidavit, with attached Exhibits.

In response to the Defendant's evidence, Plaintiff has submitted a copy of his Inmate Request dated June 30, 2015, in which he asked the Defendant to approve Jones' request for visitation, and in which he describes Jones as his "fiancé". This exhibit indicates that the Defendant denied Plaintiff's request on January 7, 2015. See Plaintiff's Exhibit.[5]

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none

---

[5]This document has also been provided by the Defendant as part of attached Exhibit E to her affidavit.



exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and exhibits submitted, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendant is entitled to summary judgment in this case.

Plaintiff alleges that the Defendant is violating is First Amendment right of freedom of association. However, applicable caselaw holds that "there is no constitutional right to prison visitation, either for prisoners or visitors". White v. Keller, 438 F.Supp. 110, 115 (D.Md. 1977). While members of society have rights of physical association, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights", and prison inmates do not retain "those First Amendment rights that are [ ] inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the correction system, to whose custody and care the prisoner has been committed in accordance with due process of law". Id., at 116, quoting Pell v. Procunier, 417 U.S. 817, 822 (1974) (citations omitted).

In examining the prison restrictions presented here pursuant to this standard, it should be noted that the United States Supreme Court has held that "[t]he concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution". Jones v. North Carolina Prisoner's Labor Union, Inc., 97 S.Ct. 2532, 2538 (1977); see also White, 438 F.Supp. at 117 [Prisoners have no right to associate face-to-face with any particular member of the public, and members of the public have no right to so associate with any particular prisoner]; cf. Al-Owhali v. Holder, 687 F.3d 1236, 1241 (10th Cir. 2012)(citing Jones, v. North Carolina Prisoner's Labor Union, Inc., supra. As was stated by the Supreme Court in Jones:

- 7 -



> [N]umerous associational rights are necessarily curtailed by the reality of confinement. They may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations whether through group meetings or otherwise, possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment.

Jones, 97 S.Ct. at 2540; see also Overton v. Bazzetta, 539 U.S. 126, 132 (2003) [Finding that "[a]n inmate does not retain rights inconsistent with proper incarceration", and that "freedom of association is among the rights least compatible with incarceration"].

While Plaintiff could conceivably have an Eighth Amendment claim based on cruel and unusual punishment if he could show his visitation privileges were being denied "in an arbitrary manner to a particular inmate"; Overton, 539 U.S. at 137; Plaintiff has presented no evidence to show that the visitation privilege at issue in this lawsuit has been denied arbitrarily. The Defendant in her affidavit has set forth the process for obtaining visitation privileges at the prison and has explained in some detail why Plaintiff's and Jones' visitation requests have been denied, to include incorrect and omitted information, false information, and contradictory and inconsistent information being contained on the application forms. Further, as was found by the Supreme Court in Overton, a regulation "[p]rohibiting visitation by former inmates bears a self-evident connection to the State's interest in maintaining prison security", and that courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a correction system and for determining the most appropriate means to accomplish them". Overton, 539 U.S. at 132-133.

Additionally, not only do the regulations and decisions challenged here bare a rational relationship to a legitimate penological interest, but the Defendant's evidence also shows that



Plaintiff has alternative means of exercising the right he seeks to assert by way of differently offered means of communication. Id., at 135; see also Turner v. Safley, 482 U.S. 78, 89-91 (1987) [Setting out factors to be considered in deciding whether a prison regulation affecting a constitutional right that survives incarceration withstands constitutional challenge, to include specifically whether alternatives exist to the requested relief].

Finally, having concluded that the Defendant's actions in denying Jones' visitation privileges did not violate a clearly established constitutional right, the undersigned further finds that the Defendant is entitled to qualified immunity on Plaintiff's claim in any event. Harlow v. Fitzgerald, 457 U.S. 800 (1982) [Defendant entitled to qualified immunity where the conduct alleged did not violate clearly established statutory or constitutional rights of which a reasonable person should have known]; cf. Williams v. Ozmint, 716 F.3d 801, 808 (4th Cir. 2013).

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted,** and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 16, 2016
Charleston, South Carolina

- 9 -



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

