IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Reginald Spellman, ) | Civil Action No. 9:15-1275-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| Alice Mascio, *Visitation Coordinator*, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the Report and Recommendation of the Magistrate Judge, recommending summary judgment for Defendant. For the following reasons, the Court adopts the Report and Recommendation as the Order of the Court and grants summary judgment for Defendant.

I. **Background**

Plaintiff is an inmate at Kershaw Correctional Institution. Plaintiff alleges in his verified Complaint that Defendant, a prison official in charge of visitation, has denied him visitation with Lorraine Michelle Jones, variously described as his friend, girlfriend, fiancée, and common law wife, and that the visitation denial violates his First Amendment rights.

Defendant avers that visitation with Ms. Jones was denied because Plaintiff and Ms. Jones failed to comply with prison policy regarding visitation applications. Specifically, Plaintiff failed to include Ms. Jones on his "relative" list and Ms. Jones failed to disclose her criminal history as required on her "Request for Visiting Privileges" forms. Ms. Jones had prior convictions for driving while license revoked ("DWLR") in North Carolina, in 1999, 2000, 2003, 2005, and 2012.[1]

---

[1] In her motion for summary judgment, Defendant remarkably refers to Ms. Jones's criminal background five times without ever stating what Ms. Jones' criminal offenses were. The Court gleans the details from application forms Defendant attached to her motion for summary judgment.

-1-

Those are misdemeanor offenses, and on the record in this case (*i.e.*, no record of driving-while-impaired offenses by Ms. Jones) they are Class 3 misdemeanors, the least serious type of criminal offense possible under North Carolina law. *See* N.C. Gen. Stat. § 20-28. She received a fine for each offense, plus probation for her 2000 offense. Additionally, she reported a misdemeanor larceny conviction at an undisclosed time and place, resulting in an undisclosed sentence—although since she indicated that she had previously been an inmate in a state or federal correctional institution it may be reasonable to infer that she was sentenced to some term of confinement, most likely in North Carolina. Under North Carolina law, the only form of misdemeanor larceny which can result in incarceration for a first offense is larceny of property or services valued at $1,000 or less, which is a Class 1 misdemeanor that carries a sentence of up to 45 days' incarceration. *See* N.C. Gen. Stat. §§ 14-72(a) & 15A-1340.23.

The nature of the relationship between Plaintiff and Ms. Jones is disputed. Plaintiff has inconsistently described his relationship with Ms. Jones as a common law marriage, engagement, or friendship. However, Plaintiff's response to Defendant's motion for summary judgment makes it clear that he misunderstands the term "common law marriage" to be synonymous with marital engagement. (Resp. to Def.'s Mot. Summ. J. 1, Dkt. No. 43 ("The word fiancae [*sic*] it has the same meaning for common-law wife two parties who have agree to be married.").) Defendant avers that Plaintiff claimed that he was still married to his previous wife. (Aff. of Alice Mascio ¶ 15, Dkt. No. 40-2.) Plaintiff counters that he had been separated from his first wife for six years

---

The Court trusts if that information were inaccurate Defendant would have informed the Court. Defendant's issue appears to be that Ms. Jones failed to list some (or any) of her DWLR and misdemeanor larceny convictions on various applications to visit Plaintiff, not that she failed to report some other, more serious offense. As the information therein is largely consistent with Plaintiff's representations in his objections to the Report and Recommendation, the Court considers these details regarding Ms. Jones's criminal offenses to be uncontested facts.

when he was incarcerated, and that since his incarceration a divorce has been finalized. (Resp. to Def.'s Mot. Summ. J. 2.)

Finally, Defendant asserts that Plaintiff is not prohibited from contact with Ms. Jones by letter or telephone (Mascio Aff. ¶ 18); Plaintiff does not deny that assertion.

Defendant filed the present action *pro se* under 42 U.S.C. § 1983 on March 19, 2015, seeking declaratory judgment, injunctive relief to allow visitation with Ms. Jones, compensatory damages of $4,000, punitive damages of $4,000, and costs. Defendant moved for summary judgment on November 18, 2015. The Magistrate Judge filed a Report and Recommendation recommending summary judgment for Defendant on February 16, 2016. Plaintiff timely filed objections to the Report and Recommendation on February 29, 2016.

## II. Legal Standard

### A. Report and Recommendation of the Magistrate Judge

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

When a proper objection is made to a particular issue, "a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). However, "[t]he district court's decision whether to consider additional evidence is committed to its discretion, and any refusal will be reviewed for abuse." *Doe v. Chao*, 306 F.3d 170, 183 & n.9 (4th Cir. 2002). "[A]ttempts to introduce new evidence after the magistrate judge has acted are disfavored," though

the district court may allow it "when a party offers sufficient reasons for so doing." *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) (listing cases).

### B.  Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.  Discussion

The Magistrate Judge concludes that Plaintiff has no constitutional right to prison visitation under the First Amendment. The Court agrees. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (concluding that "[a]n inmate does not retain rights inconsistent with proper incarceration," and

that "freedom of association is among the rights least compatible with incarceration"); *Jones v. N.C. Prisoner's Labor Union, Inc.*, 433 U.S. 119, 126 (1977) ("The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution."). The Court further notes that Mr. Jones is not prohibited from associating with Ms. Jones—he is only prevented from meeting with her face-to-face within the prison facility. Plaintiff has no First Amendment claim. Indeed, Plaintiff's objections to the Report and Recommendation concede as much. (*See* Obj. to R. & R. 1, Dkt. No. 48.)

The record admits no genuine dispute that visitation with Ms. Jones was denied because she did not disclose her criminal background as required. There is nothing arbitrary or capricious or discriminatory in requiring persons to disclose their criminal backgrounds as a prerequisite to entering penal facilities and meeting with prisoners face-to-face. The Magistrate Judge dealt with a possible Eighth Amendment claim in the Report and Recommendation and the Court agrees with the Magistrate Judge's analysis—"courts 'must accord substantial deference to the professional judgment of prison administrators'" and against that deference "Plaintiff has presented no evidence to show that the visitation privilege at issue in this lawsuit has been denied arbitrarily." (R. & R. 8 (quoting *Overton*, 539 U.S. at 132–33).) Even when construed as liberally as possible, the Complaint presents no cognizable constitutional claim. Without a cognizable constitutional claim, the Court cannot grant relief under § 1983.

## IV. Conclusion

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation of the Magistrate Judge (Dkt. No. 46) and **GRANTS** Defendant's motion for summary judgment (Dkt. No. 40).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

March 1, 2016
Charleston, South Carolina